UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEANNE BRAUN,<br><br>                    Plaintiff,<br><br>v.<br><br>ADMINISTRATORS FOR THE PROFESSIONS, INC.<br>ANTHONY J. BONOMO AND CARL BONOMO,<br><br>                    Defendants. | Docket No. _____<br><br><br>**COMPLAINT**<br><br>**PLAINTIFF DEMANDS A TRIAL BY JURY** |

Plaintiff, Jeanne Braun, by and through her attorneys, The Dweck
Law Firm, LLP, complains of the Defendants and respectfully alleges to
this Court as follows:

### INTRODUCTION and NATURE OF ACTION

1.     Defendant, Administrators for the Professions, Inc.
("AFP"), is in the business of providing medical malpractice insurance
to hospitals, medical care facilities and physicians.  It is one of
the largest medical malpractice insurers in New York State. The senior
level management at AFP consisted primarily of males. This included
Defendant Anthony J. Bonomo, the Chief Executive Officer and his
brother Carl Bonomo, an Executive Vice President.  Plaintiff worked
for AFP for 23 years, was responsible for having generated a billion
dollars in premiums to AFP and was a dedicated and loyal employee.
She remained loyal to AFP and the Bonomo brothers throughout difficult
times which included the investigation of Dean Skelos and the
testimony of Anthony J. Bonomo during the Skelos trial.  In return for

Plaintiff's tenure, loyalty, commitment and excellent work, she was advised on September 7, 2016 that her employment would be terminated effective immediately. No notice and no opportunity to work out a dignified exit. Plaintiff was the only member of senior management who was terminated. Considering the "Old Boy's Club" mentality that was pervasive within the workplace, and which Plaintiff tolerated, it was no surprise that Plaintiff, as a female in senior management, was selected for termination.

2.     Plaintiff now brings these claims to recover damages for discrimination on the basis of gender and age in the terms, conditions and privileges of her employment under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. 621 et. seq. ("ADEA") and the N.Y. Executive Law § 290, *et seq.* ("NYSHRL"). Plaintiff's claims against the individual Defendants, who are brothers, senior level executives of the corporate Defendant and decision makers, are based upon their discriminatory treatment of Plaintiff and for aiding and abetting in discrimination against the Plaintiff.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. 1331 as it involves claims under federal statutes. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

4.     Venue is properly laid in the Eastern District of New York, pursuant to 28 U.S.C. 1392(a), because the Eastern District of New York is the judicial district within the state in which a substantial

2

part of the events forming the basis of this lawsuit are alleged to have been committed.

**PARTIES**

5.    At all times hereinafter mentioned, Plaintiff was and still is a citizen of the State of New York.

6.    Plaintiff is a female, 60 years old and her date of birth is February 4, 1957.

7.    At all times material herein, Plaintiff was an "employee" entitled to protections within the meaning of the Title VII, the ADEA and the NYSHRL.

8.    Defendant, Administrators for the Professions, Inc. (hereinafter "AFP"), is the management arm of Physicians Reciprocal Insurers (hereinafter "PRI"), which provides risk management, including malpractice insurance, to physicians, hospitals and healthcare facilities in New York State.  It is a New York Corporation with its principal place of business at 1800 Northern Boulevard, Roslyn, New York within Nassau County New York.

9.    AFP is an employer within the meaning of the Title VII.

10.    AFP is an employer within the meaning of the ADEA.

11.    AFP is an employer within the meaning of the NYSHRL.

12.    Defendant Anthony J. Bonomo (hereinafter "A. Bonomo") is a citizen of the State of New York.

13.    Defendant A. Bonomo, at all relevant times, was the supervisor of Plaintiff and exercised domination and control over her

day-to-day activities. Further, A. Bonomo maintained frequent daily contact with Plaintiff as part of both of their daily job duties

14.    Defendant Carl Bonomo (hereinafter "C. Bonomo") is a citizen of the State of New York.

15.    Defendant C. Bonomo, at all relevant times, was the Executive Vice President of AFP and maintained frequent daily contact with Plaintiff as part of both of their daily job duties.

## PREREQUISITES

16.    Plaintiff has timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission and has received a Right to Sue.  This action has been commenced within ninety (90) days of the issuance of the Right to Sue Letter.

17.    Before filing the Complaint in this action, Plaintiff caused a copy of it to be served upon the Corporation Counsel of the City of New York.

## BACKGROUND OF PLAINTIFF'S EMPLOYMENT

18.    Plaintiff commenced her employment with AFP in 1994 as a Vice President in the Defendant's Hospital Department.

19.    In approximately 1999 Plaintiff was promoted to Senior Vice President.  Plaintiff's responsibilities were still within the Hospital Department, but she now worked on Hospital and Specialty programs.

20.    In 2003 Plaintiff was again promoted, this time to Executive Vice President.

21.   Immediately prior to Plaintiff's termination she was responsible for the hospital and healthcare divisions of AFP. Her responsibilities included, but were not limited to production, marketing, service, risk management, underwriting, field consulting and billing. Plaintiff was a member of senior management and supervised a staff of eighteen (18).

22.   Immediately prior to Plaintiff's termination her annual compensation package was just under $900,000.  This was comprised of salary of $439,000, bonus of approximately $400,000 and other benefits.

23.   At all relevant times Plaintiff was fully qualified for the position which she held.

24.   At all times during the course of her employment by Defendant, and up until the last day of her employment, Plaintiff performed her services competently, faithfully, diligently and in an outstanding manner.

25.   During the course of Plaintiff's employment, Plaintiff received regular merit salary increases as well as incentive compensation in the form of performance bonuses annually.

**DISCRIMINATION**

26.   A. Bonomo and C. Bonomo's demeanor, comments and interaction with Plaintiff, and/or, the exclusion of Plaintiff and others within the workplace, represented a pattern and practice of *cronyism* and a *boys' club*. Additionally, the comments and treatment to which Plaintiff was subjected represented an animus towards Plaintiff because of her gender and her age.

27.   Examples of the pattern and practice of gender and age discrimination to which Plaintiff was subjected included, without limitation, the following:

a.   In the Defendants having engaged in a pattern and practice of hiring and/or maintaining male individuals in senior management to the exclusion of female individuals;

b.   In the Defendants having engaged in a pattern and practice of hiring younger individuals;

c.   In the Defendant having made decisions regarding termination based upon age, specifically terminating older employees and retaining younger employees;

d.   In the Defendants having made decisions regarding termination based upon gender specifically terminating female employees and retaining male employees;

e.   During the course of Plaintiff's employment Defendant C. Bonomo regularly teased Plaintiff about when she would retire and what she would do thereafter, including teasing her that she "would become a greeter at Walmart";

f.   In C. Bonomo having told Plaintiff that she "would not get more of a severance package" and that "it was Anthony's money and that if he wanted to give you more that was his prerogative."

g.   After Plaintiff had confided to C. Bonomo about having gotten divorced, C. Bonomo teased Plaintiff about having a boyfriend who was younger than she was.

h.   In C. Bonomo complaining to Plaintiff about his wife always nagging him to do things around the house, about going shopping

6

and attending social family events and then stating to Plaintiff, "What's up with yous women?"

i.    In the Defendants, including A. Bonomo and C. Bonomo, and Gerry Dolman, another male who was a member of senior management having treated Plaintiff differently, and ultimately terminating Plaintiff's employment, after Plaintiff had made a legitimate inquiry to Defendant about a what type of retirement package and retirement benefits she would receive in the event she decided to retire;

j.    In having excluded Plaintiff, because she was a women, from meetings, decision making processes and social events, including dinners and trips, including a trip to Las Vegas;

k.    In having been constantly bullied, harassed and embarrassed by C. Bonomo, wherein men within the workplace did not suffer the same treatment from him.  When Plaintiff brought this conduct to the attention of A. Bonomo, she was told to, "deal with it, he is my brother."

l.    In C. Bonomo having routinely harassed Plaintiff about her salary and bonus and denied her opportunities to take on additional responsibilities that would have improved the business development of AFP;

m.    In the Defendants having treated Plaintiff in a discriminatory manner as set forth hereinbefore, yet when Defendants suffered financial setbacks as a result of political and regulatory inquiries the Defendants required Plaintiff to act as the "face of the company" to retain and develop business;

28.   As a result of all of the conduct as aforedescribed herein, Defendants fostered a pervasively hostile work environment and failed to remedy any complaints or the conduct as alleged by Plaintiff.

29.   Defendants campaign of harassment and disparate treatment continued up until the termination of Plaintiff on July 12, 2016.

**COUNT I**

**GENDER DISCRIMINATION UNDER TITLE VII**

30.   Plaintiff repeats and realleges each and every allegation contained in paragraphs of the Complaint numbered 1 through 30 inclusive with the same force and effect as is fully set forth at length herein.

31.   Defendants unlawfully discriminated against Plaintiff with respect to the terms and conditions of her employment because of her gender.  By reason thereof, Defendants violated the Title VII.

32.   As a direct and proximate result of the unlawful and discriminatory practices of Defendants as aforedescribed, Plaintiff was humiliated and embarrassed within the work atmosphere which was brought about by virtue of the systematic and continuous unlawful harassment and multiple discriminatory practices and acts of the Defendants.

33.   As a direct and proximate result of the discriminatory practices of the Defendants, Plaintiff has also sustained significant economic damages.

8

## COUNT II

### GENDER DISCRIMINATION UNDER THE NYSHRL

34.   Plaintiff repeats and realleges each and every allegation contained in paragraphs of the complaint numbered 1 through 30 inclusive with the same force and effect as is fully set forth at length herein.

35.   Defendants unlawfully discriminated against Plaintiff with respect to the terms and conditions of her employment because of her gender.  By reason thereof, Defendants violated the NYSHRL.

36.   As a direct and proximate result of the unlawful and discriminatory practices of Defendants as aforedescribed, Plaintiff was humiliated and embarrassed within the work atmosphere which was brought about by virtue of the systematic and continuous unlawful harassment and multiple discriminatory practices and acts of the Defendants.

37.   As a direct and proximate result of the discriminatory practices of the Defendants, Plaintiff has also sustained significant economic damages.

## COUNT III

### AGE DISCRIMINATION UNDER THE ADEA

38.   Plaintiff repeats and realleges each and every allegation contained in paragraphs of the complaint numbered 1 through 30 inclusive with the same force and effect as is fully set forth at length herein.

39.   Defendants unlawfully discriminated against Plaintiff with respect to the terms and conditions of her employment because of her age.  By reason thereof, Defendants violated the ADEA.

40.   As a direct and proximate result of the unlawful and discriminatory practices of Defendants as aforedescribed, Plaintiff was humiliated and embarrassed within the work atmosphere which was brought about by virtue of the systematic and continuous unlawful harassment and multiple discriminatory practices and acts of the Defendants.

41.   As a direct and proximate result of the discriminatory practices of the Defendants, Plaintiff has also sustained significant economic damages.

### COUNT IV

### AGE DISCRIMINATION UNDER THE NYSHRL

42.   Plaintiff repeats and realleges each and every allegation contained in paragraphs of the complaint numbered 1 through 30 inclusive with the same force and effect as is fully set forth at length herein.

43.   Defendants unlawfully discriminated against Plaintiff with respect to the terms and conditions of her employment because of her age.  By reason thereof, Defendants violated the NYSHRL.

44.   As a direct and proximate result of the unlawful and discriminatory practices of Defendants as aforedescribed, Plaintiff was humiliated and embarrassed within the work atmosphere which was brought about by virtue of the systematic and continuous unlawful

10

harassment and multiple discriminatory practices and acts of the Defendants.

45.   As a direct and proximate result of the discriminatory practices of the Defendants, Plaintiff has also sustained significant economic damages.

**WHEREFORE,** Plaintiff demands the following relief:

A.   A money judgment against Defendants for her damages including but not limited to lost wages, lost benefits, other economic damages, shame, humiliation, embarrassment and mental distress;

B.   Reinstatement, or, in the alternative, front pay;

C.   Punitive damages under Title VII;

D.   Liquidated damages under the ADEA;

E.   An award of attorney's fees as permitted under Title VII and the ADEA;

F.   Prejudgment interest and costs; and

G.   Such further and additional relief as this court deems just and appropriate under the circumstances.

THE DWECK LAW FIRM LLP

By: _____

H.P. Sean Dweck (HPSD-4187)
*Attorneys for Plaintiff*
10 Rockefeller Plaza
Suite 1015
New York, New York 10020
(212) 687-8200
hpsdweck@dwecklaw.com

11